**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

Civil Case No.: 0:16-cv-62463-WJZ

CHERIE SEROTA and MURRAY SEROTA,

    *Plaintiffs,*

vs.

CARRIAGE HILLS CONDOMINIUM, INC.,
and HUGO HERMAN, an individual,

    *Defendants.*

**DEFENDANT CARRIAGE HILLS CONDOMINIUM INC.S'
MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF
CIVIL PROCEDURE 12(b)(1) AND 12(b)(6) AND
INCORPORATED MEMORANDUM OF LAW**

Defendant, CARRIAGE HILLS CONDOMINIUM, INC. ("Carriage Hills" or "Association"), hereby moves to dismiss, with prejudice, the Complaint of Plaintiffs' CHERIE SEROTA and MURRAY SEROTA ("Plaintiffs").

**I. INTRODUCTION**

Carriage Hills is a condominium association which operates and maintains the property subject to its recorded declaration of condominium. Plaintiff has previously sued Carriage Hills[1] relative to Plaintiffs service animals' presence in Carriage Hills' common elements, and the instant suit ostensibly arises from an alleged breach of a settlement agreement executed by the parties to resolve the prior lawsuit. Plaintiffs allege that Carriage Hills circulated a newsletter which stated "New county rules do not allow animals within the fenced-in areas of our pools." Complaint, ¶19.

---

[1] Serota v. Carriage Hills Condo., Inc,. No. 13-cv-62166-WPD (S.D. Fla. 2013).

Plaintiffs next allege that after seeing Plaintiffs with their service animals near a pool on July 4, 2016, Hugo Herman[2] "demanded that Plaintiffs remove their service animals from the swimming pool area immediately, notwithstanding Plaintiffs' contractual and legal right to enjoy use of all common elements…" *Id.* at ¶22. Lastly, Plaintiffs allege that they received a letter from Carriage Hills' property management dated July 12, 2016, in response to their notification that Plaintiff replaced his service animal. Those are the total actions which Plaintiff alleges Carriage Hills took subsequent to the parties' execution of the settlement agreement attached to the Complaint as Exhibit "A." In reviewing the allegations of the complaint, this case appears to be little more than a thinly veiled attempt to generate attorney's fees[3], as there are no allegations that form the basis of a breach of contract, a violation of either the Federal or Florida Fair Housing Act ("FHA"), or would support the imposition of an injunction.

The complaint is rife with unsupported conclusions devoid of the requisite factual support. Further, the facts alleged in the Complaint could not plausibly result in a valid claim. Specifically, Plaintiffs claim that they know they are disabled, and a reasonable accommodation is to allow their service animals to accompany them onto the common elements. *Id.* at ¶¶4-5. They next allege they previously sued Carriage Hills for the same claims as in this case, and the result was a settlement agreement whereby Plaintiffs could have their service animals on the common elements, they could replace the service animals in their sole discretion with no review, and that in addition to the settlement, Plaintiffs both received a letter attesting to these facts that they could carry with themselves as a shield at all times. *Id.* at ¶¶9-12. Yet despite Plaintiffs clear understanding of their

---

[2] Carriage Hills board president.

[3] As stated by Plaintiff's counsel on his website, in the context of ADA litigation, "These cases can be a nuisance, and often cause unnecessary aggravation and expense." http://www.ada-defense.com/ (last visited December 5, 2016).

rights, evidenced by the documents attached as Exhibits "A" and "B," Plaintiffs claim they were deprived of those rights based on a newsletter and a conversation with Hugo Herman, where Plaintiffs do not even allege they or their animals left the common elements in response to said conversation. Plaintiffs tacitly acknowledge they did not leave the common elements as they state "Herman's conduct… constitutes an **attempt** to personally intimidate, and otherwise interfere with Plaintiff's **known legal and contractual rights**." *Id.* at ¶27 (Emphasis added). Under the framework of facts set forth by the Plaintiffs in their Complaint, it is simply not plausible that either Plaintiff could have been made to abandon their known rights because of the actions alleged against Carriage Hills.

Based on these allegations Plaintiffs allege breach of contract, as well as violations of the Federal FHA, 42 U.S.C. §3604, 3613, 3617, and Florida FHA, §760.37 *et seq*. Plaintiffs' claims all fail.

First, Plaintiffs allegations fail to amount to a breach of a written contract where none of the alleged actions interfere with the rights spelled out in the contract. Second, even if Plaintiffs could allege a breach of the agreement, they violated its forum selection clause in filing this suit, as the proper court for enforcement actions is the specific trial court where the 2013 suit was filed.

Third, by the terms of the settlement agreement Plaintiffs are entitled to replace their service animals in their sole discretion without any oversight by Carriage Hills. The result of this provision is that there is never a request for a reasonable accommodation for Carriage Hills to deny, even if it were so inclined, which the letter attached as Exhibit "F" shows it is not.

Fourth, Plaintiffs own allegations make clear that Carriage Hills did not attempt to or actually discriminate based on a handicap. The Complaint repeatedly references that Hugo Herman

believed there existed a local ordinance at issue, which is indicative of his intent to follow the law, not discriminate because of a handicap. Thus Count IV necessarily fails.

Fifth, as Plaintiffs fail to allege that they intend to return to the common elements with their service animals in the future, they fail to allege sufficient future harm. This deprives them of standing to seek an injunction, which must also be dismissed.

Lastly, Plaintiffs seek emotional damages although the Complaint is devoid of any allegation of physical impact or injury. Florida's impact rule bars an award of emotional damages under these circumstances, and those claims are properly dismissed.

## II. BACKGROUND FACTS

**A.     The Parties' prior history**

As stated in Plaintiffs' Complaint, Plaintiffs have previously sued Carriage Hills regarding their service animals. The lawsuit was settled when the Parties executed a settlement agreement dated November 17, 2014, which is Exhibit "A" to Plaintiffs Complaint. The relevant provisions of the settlement agreement are Sections 4, 7 and 8. Section 4(B) identifies each Plaintiff's service animal and states that each Plaintiff may be accompanied by one canine service animal while on the common elements, excluding bringing the animal into a pool. Section 4(C) provides that the service animals can be replaced as needed, and Carriage Hills would receive prompt notification of the replacement animal. Section 4(D) details the letter provided to each Plaintiff for them to carry on them, which is meant to function as an "all-access pass" in the event they are questioned about the service animals. Sections 7 and 8 detail that the proper court for enforcement of the settlement agreement is the trial court where the suit was filed.

**B.     The activity alleged in the Complaint**

Since the execution of the settlement agreement, there has been almost no interaction

between Carriage Hills and Plaintiffs. This is supported by Plaintiffs' own Complaint, which only alleges three instances of contact between the parties, to wit: (1) a Carriage Hills' newsletter sent to all association members which contained a single sentence advising that new county rules prohibited animals within the fence enclosure surrounding a pool, Complaint, ¶19; (2) a meeting between Plaintiffs and Hugo Herman on July 4, 2016, where he allegedly requested that Plaintiffs remove their service animals from the pool area, *Id.* at ¶22; and (3) a letter dated July 12, 2016, from the property manager sent in response to correspondence sent by Plaintiffs to Carriage Hills, *Id.* at ¶¶30-31. Plaintiffs conspicuously make no allegations that the July 4, 2016, interaction in any way prevented them from using the common elements or that they or their service animals actually left the pool area because of the alleged comment by Hugo Herman.

Notwithstanding the almost complete lack of interaction, Plaintiff contends that Carriage Hills both breached the settlement agreement and violated the Federal FHA and Florida FHA.

### III. APPLICABLE LEGAL STANDARD

When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id*. Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). "If the plaintiff lacks standing under Article III of the

U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-102 (1998). The "irreducible constitutional minimum of standing contains three elements": (1) an injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. To meet this burden, a plaintiff must "clearly and specifically set forth facts sufficient to satisfy … Art. III standing requirements." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), on the other hand, tests the legal sufficiency of the claims asserted. A complaint "must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint's factual allegations must be enough to raise a right to relief above speculative level." *Dapeer*, 95 F. Supp. 3d 1372. Detailed factual allegations are not required, but a pleading "that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## IV. ARGUMENT

A.     Plaintiff fails to state a claim for breach of contract

It is well settled that "under Florida law, '[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages.'" *Managed Care Solutions. Inc. v. Cmty. Health Sys.*, No. 10-60170-CIV-MORE, 2011 U.S. Dist. LEXIS 138968, at *18 (S.D. Fla. Dec. 1, 2011) (quoting *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000)). While a valid contract is undisputed, Plaintiffs' claims of a material breach are flatly contradicted by the settlement agreement and the allegations of the Complaint. The operative language of the settlement agreement, attached to the Complaint as Exhibit "A," is in paragraph 4(B): "Cherie Serota may be accompanied by one canine service animal while on the shared common elements…Murray Serota shall be entitled to be accompanied by one canine, service animal while on the Common Elements…"

The Complaint is devoid of any allegation that the above provision was violated by any of the conduct alleged. It is clear that the June 2016 newsletter, attached to the Complaint as Exhibit "C," in no way prevented Plaintiffs from being accompanied by their service animals while on the common elements, as they expressly alleged they continued to use them after the fact. Compl., ¶20. Additionally, while Plaintiffs allege that on July 4, 2016, Hugo Herman "demanded that Plaintiffs remove their service animals from the swimming pool area immediately, notwithstanding Plaintiffs' contractual and legal right to enjoy use of all common elements…" *Id.* at ¶22, there is no allegation by Plaintiffs that they then left the common elements or removed their service animals from the common elements in response. The only action Plaintiffs claim they took in response to their conversation with Hugo Herman was to call the City of Hollywood, which allegedly advised them there was no identifiable ordinance. *Id.* at ¶¶23-24. There are no allegations in the Complaint that the Plaintiffs were prevented from being accompanied by a service animal while on the common elements, thus there is no allegation of material breach of a contract. Further,

where there is no material breach, there can be no damages. Plaintiffs' Complaint flatly fails to state a claim for breach of contract under Rule 12(b)(6).

**B.     Proper venue for enforcement of the settlement agreement is only with the trial court where the first suit was brought, not filing a new action.**

Plaintiffs attached the parties' settlement agreement to their Complaint as Exhibit "A." Said settlement agreement contains a forum selection clause which Plaintiffs ignored and violated in filing the instant action, rendering this Court the improper venue for enforcement. Plaintiffs boldly claim that the enforcement provisions require "that any dispute be resolved by a federal district court located in Broward County, Florida." Compl., ¶13. Plaintiffs are simply wrong.

Specifically, the settlement agreement at Section 7 reads: "ENFORCEMENT…The Parties agree that **the exclusive venue for any dispute** arising between, and among the Parties under the Agreement, **shall be** Broward County, Florida, **in the federal district court in which the action was pending**, or, if the federal court does not accept jurisdiction, then in any other Broward County court having jurisdiction to enforce this Agreement." (Emphasis added). Plaintiffs do not claim that the federal district court where the action was pending declined jurisdiction prior to filing the instant suit. Additionally relevant is Section 8, which reads in pertinent part: "…the trial court reserving jurisdiction to enforce the terms of the Agreement." The foregoing provisions constitute a forum selection clause which mandates that enforcement actions be filed in the same court where the original suit was filed, *not* to file a new action, as was done here.

Forum selection clauses are presumptively valid, and the burden of proving their unreasonableness is a heavy one. *Solymar Invs., Ltd. v. Banco Santander S.A.*, No. 10-20695-CIV-MORE, 2011 U.S. Dist. LEXIS 50127, at *38 (S.D. Fla. Mar. 14, 2011) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)). When a valid forum selection clause exists, the party seeking to defeat the agreed upon venue "bears the burden

of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute." *Id.* (quoting *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989)).

The parties, specifically the Plaintiffs as drafters, have already agreed to the proper forum for enforcement of the settlement agreement: the trial court in which the original case was filed. Requiring Plaintiffs to adhere to their pre-selected forum does no more than provide the parties what they have previously agreed to, which protects both sides' legitimate interests and avoids unnecessary expense, e.g. attorneys' fees attendant to an unnecessary complaint. The Southern District has previously recognized that forum selection clauses are prima facie valid and enforceable, and must be strictly adhered to. *See Velazquez v. United States Sogo, Inc.*, 12 Fla. L. Weekly Fed. D417 (S.D. Fla. June 17, 1999) (Court granted defendant's motion to dismiss, with prejudice, based on the suit being filed in contravention of the forum selection clause).

C.      **Plaintiffs' Complaint fails to allege denial of a reasonable accommodation**

Plaintiff next alleges Carriage Hills violated Section 3604(f)(3)(B) of the Federal FHA and §760.23(9)(b) of the Florida FHA[4] by refusing to grant a reasonable accommodation. "To prevail on a Section 3604(f)(3)(B) claim, a plaintiff must establish that (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation." *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 467 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218-19 (11th Cir. 2008)).

Plaintiffs' claim under Section 3604(f)(3)(B) is defective as the Complaint fails to allege

---

[4] Because this section of the Florida FHA is identical to the Federal FHA, the Federal analysis applies to Florida. *See McHale v. Water's Edge Ass'n, Inc.*, No. 1:14-cv-23381-UU, 2014 U.S. Dist. LEXIS 182258, at *10 n.5 (S.D. Fla. Dec. 1, 2014).

even the necessary elements of the cause of action. At the outset, there is a glaring deficiency because pursuant to the settlement agreement, the Plaintiffs do not have to request a reasonable accommodation, rather, they are automatically allowed to replace their service animals as they see fit. There is no dispute that Plaintiffs, under the settlement agreement, were permitted to each keep a canine service animal, and their respective animals could accompany them anywhere on the common elements, excluding into a swimming pool. Compl., ¶¶10-12. Thus the settlement agreement itself was a reasonable accommodation in light of Carriage Hills' no-pet policy. Said settlement agreement also provides that Plaintiffs did not need to make new requests for accommodation when replacing their service animals. Plaintiffs merely needed to update Carriage Hills with the new service animal's information after the fact. *Id*. at ¶12.

In fact, Plaintiff exercised this right in replacing "Juan Moore" with "Leche," and notified Carriage Hills of this after the replacement. *Id*. at ¶¶28-29. Carriage Hills responded via letter dated July 12, 2016, with its express approval, although it was not required to do so. *Id.* at Exhibit "F." The face of said letter flatly contradicts the tortured interpretation attempted by Plaintiffs in their Complaint. *Id.* at ¶¶30-31.

As the parties' settlement agreement specifically permitted Plaintiffs to replace their service animals in their sole discretion, there could be no request for a reasonable accommodation. Likewise, absent a request, the denial alleged by Plaintiffs is impossible. However, Carriage Hills provided its express approval if there were any lingering doubts about its approval of "Leche." Simply put, Plaintiffs' conclusion that they were denied a reasonable accommodation is not supported by the necessary factual allegations.

**D.    Plaintiffs' Complaint fails to allege discrimination in violation of the Federal FHA**

Plaintiffs erroneously claim that (1) a newsletter advising of a county ordinance; (2) an

alleged demand by Hugo Herman to remove the service animals due to a local ordinance; and (3) a letter from Carriage Hills noting its approval of a replacement service animal are clear evidence of discrimination under the FHA. In looking at the relevant statute, 42 U.S.C.S. § 3604(f)(2) makes it unlawful to discriminate in the terms, conditions, or privileges of, or in the provision of services or facilities in connection with, a rental because of a disability. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1217 (11th Cir. 2016).

The allegations of the Complaint, however, make clear that there was never any discrimination "because of a disability." As discussed *supra*, Plaintiffs were in no way hindered by the newsletter advising of the county ordinance, as they brought their service animals on the common elements subsequent to its publication. Compl., ¶20. Further, even accepting as true the alleged statement by Hugo Herman on July 4, 2016, there is no allegation that Plaintiffs or their service animals ceased use of the common elements, which is fatal to their claim. However, assuming that mere words without Plaintiffs abandoning the common elements were sufficient, §3604(f)(2) still is not satisfied because the conduct did not occur "because of a disability." Plaintiffs own allegations are that Herman demanded the animals leave the pool area because of the city's "new ordinance prohibiting all service dogs from being within the vicinity of any swimming pool." *Id.* at ¶¶21-22. Thus Plaintiffs own allegations evidence that Hugo Herman was at most seeking compliance with a local ordinance, not discrimination because of a handicap. This is further supported by the Complaint, which makes no allegations of any efforts to prevent the Plaintiffs service animals from being on the common elements between the execution of the settlement agreement on November 17, 2014, and the filing of the instant suit.

E.      **Plaintiffs lack standing to seek injunctive relief because they have not alleged a threat of future injury**

Plaintiffs seek injunctive relief in Counts I-III of the Complaint, but Plaintiff lacks the

necessary standing to be granted such relief. Article III requires that a plaintiff seeking injunctive relief allege a threat of future harm. *See Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges … a real and immediate –as opposed to merely conjectural or hypothetical – threat of *future* injury.").

Here, Plaintiffs fail to allege a threat of future harm. Noticeably, Plaintiffs do not allege that they actually left the pool area or removed their service animals from pool area after their conversation with Hugo Herman on July 4, 2016. More importantly though, they do not allege that they have any intention of returning to any of the pools with their service animals. Nor do they even allege that they attempted to return to a pool area after July 4, 2016, or that they were refused because of their service animals on subsequent occasions. Therefore, Plaintiff's claim for injunctive relief must be dismissed. *See Suarez v. Ryans*, 2013 U.S. Dist. LEXIS 63705 (M.D. Fla. May 3, 2013) (dismissing FHA claim for permanent injunction where Plaintiff failed to sufficiently allege a reasonable expectation that the injury she has suffered will continue or will be repeated in the future), and *Rhiner v. Jones,* No. 15-14319-Civ-ROSENBERG, 2016 U.S. Dist. LEXIS 128031, at *21 (S.D. Fla. June 24, 2016) (quoting *Malowney v. Fed. Collection Dep. Group,* 193 F.3d 1342, 1346 (11th Cir.), (2000) (dismissing claim for injunctive relief where applicant failed sufficiently to allege a threat of future harm).

**F.     Plaintiffs claim for emotional distress damages is barred by Florida's impact rule**

Plaintiff additionally claims damages from severe emotional and psychological stress due to Carriage Hills' alleged malicious and reckless actions, and wanton disregard for Plaintiffs' health. Compl., ¶¶40, 49, 56 and 63. However, Plaintiffs' claims are unambiguously barred by Florida's impact rule, which holds a plaintiff cannot recover damages for mental pain and suffering

absent physical injury or impact. *Forde v. Royal's Inc.,* 573 F.Supp. 1173 (S.D. Fla. 1982). "In essence, the rule requires that a plaintiff either prove a physical impact upon his or her person causing the emotional distress or mental anguish or that the defendant's tortious conduct was so egregious as to be deemed malicious so as to warrant punitive damages." *Swerhun v. General Motors Corp..,* 812 F. Supp. 1218, 1221 (M.D. Fla. 1993).

There is no doubt that Plaintiffs' Complaint fails to plead any allegations of physical impact or injury, in any fashion, thus Florida's impact rule makes dismissal appropriate. *Morrison v. Morgan Stanley Props.*, No. 06-80751-Civ-LENARD/TORRES, 2007 U.S. Dist. LEXIS 58038, at *18 (S.D. Fla. Aug. 9, 2007) (Court applied impact rule and dismissed negligence count for failing to plead physical injury).

Absent claims of physical injury, Plaintiffs must allege conduct so egregious that it is deemed malicious to warrant the imposition of punitive damages. Plaintiffs have failed to make such necessary allegations. "Federal courts apply the same standard for punitive damages in FHA cases as they do in employment discrimination and civil rights cases." *Whyte v. Alston Mgmt.*, No. 10-81041-CIV-DIMITROULEAS/SNOW, 2012 U.S. Dist. LEXIS 190421, at *11 (S.D. Fla. Apr. 10, 2012). The key consideration in this context is the actors' state of mind, specifically, whether they knew their actions would violate the law. As clearly set forth in the Complaint, Hugo Herman published the newsletter and made his alleged demand of July 4, 2016, based on the belief that there was a governing local law. There are no allegations in the Complaint that these acts were taken with discriminatory intent or in knowing violation of federal law, thus punitive damages are not appropriate.

Moreover, the sole allegation against Carriage Hills is that it sent the approval letter dated July 12, 2016, attached as Exhibit "F" to the Complaint. The allegations concerning the newsletter

and July 4th conversation are levied against Hugo Herman, an officer of Carriage Hills. Compl., ¶7. It is further fatal to Plaintiffs' punitive damage claim that it is well settled that agency principles limit punitive damages to the actions of the employer. *United States v. Habersham Props., Inc.*, 319 F. Supp. 2d 1366, 1376 (N.D. Ga. 2003). While the allegations against Hugo Herman fall short of the pleading required for punitive damages, there is no question that the July 12, 2016, approval letter does not give rise to punitive damages against Carriage Hills. There is no avenue to impute punitive damages onto Carriage Hills. Additionally, absent punitive damages, the impact rule requires dismissal of Plaintiffs' emotional distress damages.

## VI. CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' claims in their entirety. Because the defects in the Complaint are irremediable, the dismissal should be with prejudice.

**Respectfully Submitted By,**

Dated: December 12th, 2016

*/s/ Alejandro I. Alonso*
Alejandro I. Alsonso, Esq.
Fla. Bar No.: 89625
**STEVENS & GOLDWYN, P.A.**
2 S. University Dr., Ste. 329
Plantation, FL 33324
(954) 458-9393
Email: *aalonso@stevensandgoldwyn.com*

Attorneys for Defendant Carriage Hills
Condominium Association, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 12th, 2016, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court and served electronically using CM/ECF, on all counsel of record identified on the Service List below in the manner

specified, either via transmission generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

                                                */s/ Alejandro I. Alonso*
                                                  Alejandro I. Alsonso

### SERVICE LIST

Nolan Klein, Esq.
(Fla. Bar No. 647977)
klein@nklegal.com
Jordan Richards, Esq. (Fla. Bar No. 108372)
richards@nklegal.com
LAW OFFICES OF NOLAN KLEIN, P.A.
Wells Fargo Tower, Ste. 1500
1 E. Broward Blvd.
Ft. Lauderdale, FL 33301
Tel.: (954) 745-0588
Fax: (877) 253-1691

Attorneys for Plaintiffs